UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WILLIAM MORRIS** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 07-9751** |
| | * | |
| **THADDEUS D. BARIDEAUX and FIRST** | * | **SECTION "L"(4)** |
| **LIBERTY INSURANCE CORPORATION** | * | |

**ORDER & REASONS**

Before the Court is First Liberty Insurance Corporation's Motion for Partial Summary Judgment (Rec. Doc. No. 36). For the following reasons, the motion is GRANTED in part and DENIED in part.

**I.       BACKGROUND**

This case arises out of a dispute over automobile insurance resulting from an automobile collision in Louisiana. On May 27, 2007, the Plaintiff was driving a 2000 Ford Taurus eastbound on Interstate 10 in Crowley, Louisiana when his vehicle collided with the Defendant Thaddeus Barideaux's westbound 2004 Nissan Titan. The Plaintiff's parents, Mr. William H. Morris and Patricia L. Morris, had an automobile insurance policy, including uninsured motorist coverage, with First Liberty Insurance Corporation ("Liberty"). They entered into the insurance contract in Virginia. The Plaintiff is listed as an additional driver on the policy. He is a professional musician and suffered injuries to his right hand, as well as damage to his musical instrument. The Plaintiff sues for damages including bodily injury, past and future medical expenses for injuries to his hand and for post-traumatic stress disorder, pain and suffering, property damage and other damages that may be shown at trial. He seeks insurance recovery under uninsured motorist injury and property damage claims, and alleges that Liberty's

tender of fourteen thousand dollars ($14,000) as a result of the accident was not in good faith. The Plaintiff seeks damages from Liberty,[1] including penalties and attorney's fees pursuant to La. Rev. Stat. 22:658 and 22:1220.

The Defendant Liberty has answered and denies liability. The Defendant contends that the Plaintiff has been fully compensated for all covered losses under the policy. Liberty further contends that it has not received adequate proof of loss and that Plaintiff's bodily injuries are minimal. In its answer, Liberty stated that its investigation into the claims and defenses in this action continues.

The Defendant Barideaux had not answered. On April 4, 2008, the Clerk of this Court granted the Plaintiff's request for an entry of preliminary default against Defendant Barideaux for failure to defend or plead in a timely manner in accordance with Rule 55(a).

## II.     THE MOTION

The Defendant Liberty seeks Partial Summary Judgment finding that 1) Louisiana law applies, 2) Plaintiff is not entitled to a double recovery, and 3) that the Plaintiff may not obtain damages and bad faith penalties where he has already been compensated for the same damages under another policy.

The Defendant asserts that under Louisiana's Conflict of Laws provisions, the Court should consider what state has more contacts with the case. Since the accident occurred in Louisiana and the Plaintiff is a resident of Louisiana, the Defendant asserts that Louisiana law should govern. In response, the Plaintiff alleges that genuine issues of fact exist as to whether the

---

[1] According to the Plaintiff, his medical bills to date amount to $5,313.08, total lost income at least $9,625.00, and at least $22,320.00 to date lost income through the effect of Post Traumatic Stress Disorder, $8,065.27 vehicle damage, $656.98 car rental costs, and the replacement cost of his double bass at $16,489.54.

Plaintiff is a resident of Louisiana or Virginia for purposes of Louisiana's conflict of laws analysis. The Plaintiff asserts in the alternative that Virginia law should govern because the policy was acquired in Virginia and the Plaintiff is a resident of Virginia, therefore Virginia has the closest relationship to the insurance contract and to this dispute.

The Plaintiff now seeks recovery under the uninsured motorist coverage of the policy. In its Motion for Partial Summary Judgment, the Defendant claims that the Plaintiff's parents held the policy of insurance and that they have already been compensated under their policy's collision coverage.[2] The Defendant argues that the Plaintiff is not entitled to a double recovery under Louisiana uninsured motorist law. *See* La. Rev. Stat. 22:680(1)(d)(iii). Further, the uninsured motorist policy prevents double recovery, because it identifies the coverage as excess insurance to any other existing coverage. The terms of the policy also do not permit double recovery for medical damages. The Plaintiff may not recover for vehicle damage, because his father has already received payment for the damages. The Plaintiff also may not recover under Virginia's Collateral Source Rule, since the insurer is not a tortfeasor. Since the Plaintiff has already recovered, according to the Defendant, he is also not entitled to Bad Faith Penalties under either Virginia law or Louisiana law.

Plaintiff's response concedes that $16,489.54 was received for his double bass, Part D Coverage for Damage to the Auto, and that he received $14,000 unconditional tender from the Defendant. Plaintiff complains that this unconditional tender was meant to cover general and

---

[2]The Defendant has attached checks as exhibits showing checks that it has already paid $7,565.27 under the Policy for vehicle damage to the Plaintiff's parents, in addition to the $14,000 paid to the Plaintiff for medical injuries, lost wages and general damages. The Defendant also states that the double bass was not covered pursuant to any automobile insurance, but was a scheduled item under a homeowner's policy issued to the Plaintiff's parents. Therefore, the Plaintiff has also been paid $16,489.54 for the replacement cost of the double bass and other personal property. *See* Ex. E.

special damages for the injury to his hand, and lost wages from his employment at the New Orleans Center for Creative Arts, not property damages or psychological injuries. The Plaintiff also alleges that the $14,000 was not enough to cover his medical expenses and his lost wages, and that Liberty has not paid any amounts under Part C - Uninsured Motorists Coverage.

The Plaintiff argues that the Policy provided four separate coverages: Part A - Liability coverage, which is not at issue in this case, Part B - Medical Payments Coverage for medical expenses, Part C Uninsured Motorist Coverage for bodily injury and property damage, and Part D Coverage for Damage to Your Auto. The Plaintiff received damages for medical expenses under Part B and for damage to the double bass and vehicle, but has received nothing under Uninsured Motorist Coverage. In order to receive the benefit of the bargain, the Plaintiff claims that he is entitled to full recovery available under both the collision coverage and the uninsured motorist coverage, without set-offs, under Va. Code Sec 38.2-2216. The Plaintiff further claims that under Virginia law, compensation for a tort victim received from a source other than the tortfeasor may not be applied as a credit against damages the tortfeasor owes. As for whether the Plaintiff can recover bad faith damages, the Plaintiff further argues that general issues of material fact exist regarding the sufficiency of the Plaintiff's proof of loss and the Defendant's reasonableness in adjusting the Plaintiff's claim.

### III.   LAW AND ANALYSIS

Summary judgment is appropriate in a case if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party

opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. V. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

**A. Governing Law**

Louisiana's Conflict of Laws provisions direct the courts to determine the contacts that each state has with the case to identify the state whose policies would be most seriously impaired. "[T]he appropriate starting point in a multistate case such as the present one is to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, and then to conduct a choice-of-law analysis." *Champagne v. Ward*, 893 So2d 773 (La. 2005). Under La. Civ. Code 3537, that state is identified by evaluating "(1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other." Under La. Civ. Code 3515, the court should consider, "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."

The Louisiana contacts with the case include:

1. The accident occurred in Louisiana.
2. The Plaintiff's complaint identifies the Plaintiff as a long-term resident of Louisiana.
3. The Defendant argues that Plaintiff is a resident of Louisiana. At the time of the accident, the Plaintiff was temporarily employed in Louisiana as a professional double bass player in the Louisiana Philharmonic Orchestra and maintained an apartment in Louisiana during the orchestra season, which lasts approximately nine (9) months per year.
4. According to the Defendant, most of the Plaintiff's treatment occurred in Louisiana.

The Virginia contacts with the case include:

1. The Plaintiff's parents entered into the insurance contract in Virginia.
2. The Plaintiff's parents, who entered into the contract, are domiciled in Virginia.
3. The car involved in the accident was registered in Virginia.
4. The Plaintiff held a Virginia drivers license.
5. The Plaintiff argues that Plaintiff is a resident in Virginia and he has no intent to remain in Louisiana indefinitely.

In *Champagne v. Ward*, 893 So2d 773 (La. 2005), the court held that Mississippi law applied where a Louisiana resident was involved in a car accident in Louisiana. The Defendant's insurance policy was issued in Louisiana. The Plaintiff was a resident of Mississippi, Mississippi was the place of negotiation and formation of Plaintiff's insurance contract, and Plaintiff's car was garaged and presumably registered in Mississippi. The court noted that Louisiana had a strong interest in promoting full recovery for innocent automobile accident victims, as evidenced under its UM law. However, Mississippi had an interest in regulating its insurance industry and related contractual obligations. The court noted that the application of Louisiana law would result in the abrogation of the Mississippi contract. Mississippi had more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana had in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the borders of the state.

It appears that genuine issues of material fact exist regarding which state has greater contacts with the parties. For example, the Plaintiff's residence is pertinent to the choice of law inquiry. *Boutte v. Fireman's Fund County Mut. Ins. Co.*, 930 So.2d 305, 322 (La. App. 3 Cir.

5/10/06) (Louisiana law applied where accident occurred and where Louisiana resident was injured, and not Texas where policy had been issued to Texas resident, as "Louisiana has a more substantial interest in regulating awards to Louisiana citizens injured on Louisiana highways, than Texas has in this case in enforcing a temporary contract with a non-citizen of its state"); *Dunlap v. Hartford Ins. Co. of Midwest*, 907 So.2d 122 (Louisiana law where insured employee resided and accident occurred, rather than law of Michigan where policy had been issued, applied to claim for uninsured motorist benefits; even though the contractor was a Michigan corporation, it was licensed and certified in Louisiana and could expect application of Louisiana law to some or all of business, the employee was driving truck registered and garaged in Louisiana, he could expect protection by its laws, and applying Louisiana law would not conflict with Michigan's interests). Unlike the cases cited above, it is unclear whether this Plaintiff Morris is an out-of-state resident who was injured while "transitorily" within the borders of Louisiana, or whether Morris is a resident of Louisiana.

**B. Collateral Source Rule**

The Plaintiff seeks further recovery for property damage under Virginia's collateral source rule. However, that rule is meant to prevent a tortfeasor from benefitting from collateral payments to a victim. *See Schlickling v. Aspinall*, 369 S.E.2d 172, 174 (Va. 1988) ("compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes"). The rule should not be used against one who is not a wrongdoer. The cases cited by the Plaintiff in which double recover is allowed in contracting cases are cases in which the contracting party is also the wrongdoer. *Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, LP*, 263 Va. 377 (Va. 2002) (where Plaintiff sues insurer for failure to name the Plaintiff as a named insured on a builders

risk insurance policy, Plaintiff should be made whole by the tortfeasor, not by a combination of compensation from the tortfeasor and collateral sources); *Karsten v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 808 F Supp 1253(E.D. Va. 1992) (where plaintiff sues HMO for negligent care and treatment, collateral source rule allowed plaintiff to receive damages for bills already paid, where HMO was also liable as a tortfeasor). As Plaintiff does not assert that Liberty is responsible for the tort here, negligence in driving a vehicle, the Plaintiff cannot avail himself of the collateral source rule to receive double recovery for property damage.

**C. Double Recovery**

The Uninsured Motorist Coverage of the policy states, "We will pay... damages which an 'insured' or an 'indured's' legal representative is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' or an 'underinsured motor vehicle' because of: ...'Bodily injury'...and...'property damage.'" As discussed below, the Plaintiff is not entitled to double recovery for property damage. Whether or not the Plaintiff is entitled to recovery for bodily injury depends on whether Louisiana law or Virginia law governs the interpretation of the policy in this case.

**a. Property Damage**

Under the terms of the policy, the Uninsured Motorist Coverage under which the Plaintiff seeks recovery is excess over "property damage" Collision Coverage. Part C, Uninsured Motorist Coverage, in the Virginia Endorsement of the policy states, "'Property Damage' shall be excess over any other collectible insurance provided under:

    1) Part D of this policy; or

    2) Any other policy providing coverage for the 'property damage'"[3]

---

[3] Ex. A at LM-Morris.

The Plaintiff has received payment from Liberty for property damage. Under Louisiana's Uninsured Motorist Coverage law, "The coverage provided under this Section shall not provide protection for any of the following....Damages which are paid or payable under any other property insurance." La. Rev. Stat. 22:680(1)(d)(iii).

The Plaintiff cites *Moorman v. Nationwide Mut. Ins. Co.*, 207 Va. 244 (Va. 1966) for the proposition that an insured who has purchased separate insurance coverages is entitled to the benefit of each, under Virginia law. In *Moorman*, the plaintiff first recovered a settlement with the Defendant driver, which was paid by the driver's insurance policy. The plaintiff then sued the insurance company directly seeking recovery under a separate provision of the driver's policy which provided for the payment of medical expenses of other injured parties in an accident. In that case, the defendant conceded that there was no clause limiting payments to situations where payment was not already received under other insurance contracts. ("The insurance contract was prepared by Nationwide. Had it intended to limit or reduce the amount of its liability for medical payments under Coverage 'G,' if other medical payments were available to the injured person under any other coverage of its policy, or from another source, it could easily have so provided."). *Moorman* does support the notion that distinct portions of an insurance policy, paid with distinct premiums, may give rise to distinct claims. *Id.* at 247.

However, the dispute in *Moorman* concerned the payment of medical, rather than property, expenses.  Furthermore, in this case, as stated above, the policy includes a clause stating that no one may recover duplicate property coverage.  Such a clause does not conflict with Virginia law in the way that a similar clause regarding medical damages might, as discussed below.

**b. Medical Damage**s

Whether or not the Plaintiff can recover further medical damages depends on the applicable law. Under the terms of the policy, Part B, Medical Payments Coverage, states, "No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

    1. Part A or Part C of this policy; or

    2. Any Underinsured Motorists Coverage provided by this policy"

Under Virginia law, however, the insurer is prohibited from reducing the amount of damages covered by uninsured motorist coverage by the amount received by the insurer under other medical payments.  Va Code Sec 38.2-2216. "No policy or contract of bodily injury liability insurance which contains any representation by an insurer to pay medical expenses incurred for bodily injuries caused by an accident to the insured or any relative or any other person coming under the provisions of the policy, shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle then principally garaged or principally used in this Commonwealth, if the policy contains any provision reducing the amount of damages covered under the liability or uninsured motorist coverages of the policy by the amount of payments made by the insurer under the medical expense or other medical payments coverage of the policy." *Id.*

Virginia Code § 38.2-2216 forbids an insurance company from issuing a bodily injury liability policy which reduces the amount of damages recoverable under the liability or uninsured motorist coverages of the policy by any sum payable under the medical payments coverage of the policy. This statute, "potentially allow[s] persons injured in automobile accidents to recover for their medical expenses two or more times, as those persons can receive payment from not only the tortfeasor, but also from their health insurance and automobile insurance

companies, if they have chosen to obtain such insurance coverage. Nonetheless, the Virginia General Assembly has elected not to repeal or modify these statutes which mandate multiple recoveries by injured parties. The continuing existence of these statutes belies any claim that any double retention of benefits by an injured party contravenes Virginia public policy. " *Va. Mun.. Group Self-Insurance Ass'n v. Crawford*, 66 Va. Cir. 236 (Va. Cir. Ct. 2004).

Since the issue of the Plaintiff's recovery for medical damages and property damages may depend on the governing law, factual issues exist that make summary judgment inappropriate on this issue at this time.

### D. NO BAD FAITH RECOVERY

Liberty seeks summary judgment on the Plaintiff's claims for statutory bad faith penalties. Louisiana law provides that statutory penalties may be assessed against insurers in certain situations for failure to timely resolve claims or pay settlement awards. For example, Louisiana Revised Statute § 22:658 provides that failure to timely pay or attempt to settle a claim in certain circumstances shall subject the insurer to a penalty "when such failure is found to be arbitrary, capricious, or without probable cause." La.Rev.Stat. Ann. § 22:658(B)(1). Similarly, Louisiana Revised Statute § 22:1220 sets forth that an insurer that breaches its "duty of good faith and fair dealing" to the insured shall be subject to statutory penalties. La.Rev.Stat. Ann. § 22:1220.

Under Louisiana law, however, the determination of whether an insurer acted arbitrarily, capriciously, or without probable cause necessarily depends on the facts of each individual case. *See Roberie v. S. Farm Bureau Cas. Ins. Co.*, 194 So.2d 713, 716 (La.1967) ("A determination as to what constitutes bad faith or lack of good faith depends on the facts and circumstances of each case."); see also *Combetta v. Ordoyne*, 04-2347, pp. 8-11 (La.App. 1 Cir. 5/5/06); 934

So.2d 836, 842-43 ("In order to determine whether or not an insurer acted reasonably and in good faith in negotiating and settling a claim, one must look to the facts of the individual case."). Moreover, in bad faith actions against an insurer, the insured bears a considerable burden because "the insured is seeking extra-contractual damages, as well as punitive damages." *See Lewis v. State Farm Ins. Co.*, 41-527, p. 25 (La.App. 2 Cir. 12/27/06); 946 So.2d 708, 725. The insured must prove that the "insurer knowingly committed actions which were completely unjustified, without reasonable or probable cause or excuse." See *Holt v. Aetna Cas. & Sur. Co.*, 28450-CA, p. 18 (La.App. 2 Cir. 9/3/96); 680 So.2d 117, 130."

Under Virginia law, Va. Code 8.01-66.1(D) provides that if a motor vehicle insurance carrier denies coverage in bad faith, the company may be liable to the insured for that amount plus double the interest on the amount due. Whether or not an insurer acted in bad faith in refusing to pay a claim within $2,500 or less in excess of the deductible is evaluated under a standard of reasonableness. *Nationwide Mut. Ins. Co. v. St. John*, 259 Va. 71 (Va. 2000). There are no cases discussing whether this standard would apply when the claim is for more than $2,500 or more in excess of the deductible. This standard takes into account, "whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact."

Turning to the instant case, the Court finds that Liberty did not act in bad faith or arbitrarily, capriciously, or without probable cause in resolving the Plaintiff's insurance claims.

The parties dispute the domicile of the Plaintiff, which may, in turn, affect the amount of recovery to which the Plaintiff is entitled. The Defendant argues that the Plaintiff is not entitled to double recovery under Louisiana law, while the Plaintiff asserts that he is entitled to such recovery under Virginia law. The Defendant has paid $7,565.27 under the Policy for vehicle damage, in addition to the $14,000 unconditional tender intended to cover medical injuries, lost wages and general damages.  The Defendant states that the double bass was a scheduled item under a homeowner's policy issued to the Plaintiff's parents, and has been thus covered. Although it may well be true that these amounts are not sufficient to fully compensate the Plaintiff for the damages resulting from the accident, the fact that the parties dispute the total cost of damages covered by the Policy does not warrant the imposition of statutory penalties for bad faith. As a result, the Court finds that Liberty is entitled to summary judgment as to the claims for statutory bad faith penalties.

**IV.     CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Defendant's Motion for Partial Summary Judgment that 1) Louisiana law applies, and that 2) Plaintiff is not entitled to a double recovery are hereby DENIED.

IT IS FURTHER ORDERED that the Defendant's Motion for Partial Summary Judgment that the Plaintiff may not obtain compensation under statutory bad faith penalties is hereby GRANTED.

New Orleans, Louisiana this 20th day of November, 2008.

_____
UNITED STATES DISTRICT JUDGE